STATE OF NEW JERSEY AND COUNTY OF BERGEN, PLAIN-
TIFFS-RESPONDENTS, v. RICHARD C. LeVIEN, GUARD-
IAN OF GARDNER LeVIEN, A MENTAL INCOMPETENT,
DEFENDANT-APPELLANT.

Argued February 15, 1965—Decided April 12, 1965.

324

*Mr. Arthur Knaster* argued the case for defendant-appellant (*Mr. George J. Kauper,* attorney).

*Mr. Eugene T. Urbaniak,* Deputy Attorney General, of counsel, argued the cause for plaintiffs-respondents (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney for plaintiff, State of New Jersey; *Mr. Nelson G. Gross,* Bergen County Counsel, attorney for plaintiff, County of Bergen; *Mr. Richard W. DeKorte,* Assistant County Counsel, on the brief).

The opinion of the court was delivered by

SCHETTINO, J. On September 11, 1942 Gardner LeVien was adjudged insane by the Bergen County Court of Common Pleas, and ordered confined at the New Jersey State Hospital at Greystone Park. About a year later he assaulted two other patients, choking them to death. Immediately thereafter, by order of the Commissioner of the Department of Institutions and Agencies, LeVien was transferred to the State Hospital at Trenton to be held in special custody in a maximum security unit. He has remained a patient in this

institution to date; his present diagnosis being "Schizo-phrenic reactions, paranoid type, with guarded prognosis."

The cost of LeVien's maintenance during his confinement, amounting to $24,992.09, has been borne by the State of New Jersey and the County of Bergen. (Although originally indigent, defendant stipulates that LeVien's present assets exceed this amount.) Suit was instituted by them against Le Vien's guardian and a judgment in that amount was awarded by Judge Gordon H. Brown sitting without a jury. 82 *N. J. Super.* 29 (*Law Div.* 1963). While the appeal was pending in the Appellate Division, we granted certification on our own motion.

We are in agreement with the conclusion of Judge Brown that LeVien's confinement in the Trenton State Hospital has been in a "charitable" institution (*N. J. S. A.* 30:1–7) and therefore the cost of his maintenance is allocable to his estate under *N. J. S. A.* 30:4–66 which provides:

"Every patient supported in a State charitable institution shall be personally liable for his maintenance and for all necessary expenses incurred by the institution in his behalf * * *."

However, defendant contended before Judge Brown and before us that he had a right to have had criminal proceedings brought against him in 1943 after the killings, that he would have been adjudged criminally insane, and that as a "criminal insane" the State and not he would have been liable for his maintenance.[1]

I.

As to the first contention, we find no authority which would permit one who commits a crime to insist on the State's instituting criminal proceedings. It is the prosecutor

---

[1] We note that LeVien's "criminal" act is no less consistent with his commitment than the act of another patient in stealing a bed sheet is with his. It would follow from defendant's thesis that the latter would also have to be prosecuted, adjudged a "criminal insane" and dropped from the roles of those liable for their own support.

who in the first instance has the discretion in such circumstances. See *Hassan v. Magistrates Court of City of New York*, 20 *Misc. 2d* 509, 191 *N. Y. S. 2d* 238 (*Sup. Ct.* 1959), *cert.* denied 364 *U. S.* 844, 81 *S. Ct.* 86, 5 *L. Ed. 2d* 68 (1960); *Leone v. Fanelli*, 194 *Misc.* 826, 87 *N. Y. S. 2d* 850 (*Sup. Ct.* 1949); *Graham v. Gaither*, 140 *Md.* 330, 117 *A.* 858 (*Ct. App.* 1922); *Murphy v. Sumners*, 54 *Tex. Cr. R.* 369, 112 *S. W.* 1070 (*Crim. App.* 1908); Note, "Prosecutor's Discretion," 103 *U. Pa. L. Rev.* 1057 (1955); Schwartz, "Federal Criminal Jurisdiction and Prosecutors' Discretion," 13 *Law & Contemp. Prob.* 64 (1948). He has the duty to

"investigate, *i. e.*, inquire into the matter with care and accuracy, that in each case he examine the available evidence, the law and the facts, and the applicability of each to the other; that his duties further require that he intelligently weigh the chances of successful termination of the prosecution, having always in mind the relative importance to the county he serves of the different prosecutions which he might initiate. Such duties of necessity involve a good faith exercise of the sound discretion of the prosecuting attorney. 'Discretion' in that sense means power or right conferred by law upon the prosecuting officer of acting officially in such circumstances, and upon each separate case, according to the dictates of his own judgment and conscience uncontrolled by the judgment and conscience of any other person. Such discretion must be exercised in accordance with established principles of law, fairly, wisely, and with skill and reason. It includes the right to choose a course of action or non-action, chosen not willfully or in bad faith, but chosen with regard to what is right under the circumstances. * * *" *State on Inf. McKittrick v. Wallach*, 353 *Mo.* 312, 182 *S. W. 2d* 313, 318–319, 155 *A. L. R.* 1 (*Sup. Ct.* 1944).

(Quoted with approval in *State v. Winne*, 12 *N. J.* 152, 172–173 (1953).) Herein the Prosecutor of Morris County in a letter to the Attorney General, dated November 16, 1962, made his position clear and decided not to prosecute.

"Considering all the circumstances involved and that the subject was an insane inmate at the time of the commission of the crimes, it is not my intention to proceed in the matter in any way if it were later determined that he has regained sanity."

We fail to find any abuse of his discretion.

 Defendant also claims that his contention is buttressed by the Federal and New Jersey constitutional provisions pertaining to a speedy trial.[2] These provisions are of no help to LeVien. "[The] right to a speedy trial * * * is one that arises after a formal complaint is lodged against the defendant in a criminal case." *Iva Ikuko Toguri D'Aquino v. United States*, 192 *F. 2d* 338, 350 (9 *Cir*. 1951), *cert*. denied, 343 *U. S*. 935, 72 *S. Ct*. 772, 96 *L. Ed*. 1343 (1952). And in *People v. Jordan*, 45 *Cal. 2d* 697, 290 *P. 2d* 484, 491 (1955), the Supreme Court of California stated:

> "[Defendants urge] that [they] were deprived of their right to a speedy trial because the prosecution failed to obtain an indictment until over a year after the cab murder took place. There is no statute of limitation as to murder. Penal Code, § 799. * * *. The constitutional guarantees of a speedy trial, U. S. Const., VI Am; State Const. art. I, § 13, were not violated. One does not become an 'accused' until the filing of a complaint or other charge."

See also *Foley v. United States*, 290 *F. 2d* 562, 565 (8 *Cir*.), *cert*. denied 368 *U. S*. 888, 82 *S. Ct*. 139, 7 *L. Ed. 2d* 88 (1961); *Venus v. United States*, 287 *F. 2d* 304, 307 (9 *Cir*. 1960), affirmed 368 *U. S*. 345, 82 *S. Ct*. 384, 7 *L. Ed. 2d* 341 (1961); *Parker v. United States*, 252 *F. 2d* 680–681 (6 *Cir*.), *cert*. denied 356 *U. S*. 964, 78 *S. Ct*. 1003, 2 *L. Ed. 2d* 1071 (1958); *State v. Vawter*, 236 *Or*. 85, 386 *P. 2d* 915,

---

2 The Sixth Amendment to the *United States Constitution* provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

*Article* I, *par*. 10 of the *New Jersey Constitution* (1947) provides: "In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense."

917–918 (*Sup. Ct.* 1963). *Cf. Mann v. United States,* 113 *U. S. App. D. C.* 27, 304 *F. 2d* 394 (*D. C. Cir.*), *cert.* den. 371 *U. S.* 896, 83 *S. Ct.* 194, 9 *L. Ed. 2d* 127 (1962). We conclude that these constitutional safeguards are not here appropriate.

██ It may well be as suggested by defendant that a subsequent prosecutor may decide to institute criminal proceedings. If so, LeVien may at that time have the opportunity to invoke possible constitutional rights.[3]

## II.

█ Defendant also contends that a criminally insane person is entitled to be maintained by the State and the county of his legal settlement even if he is not indigent. We disagree, for even if LeVien had been adjudged a "criminal insane," he would have been liable for his maintenance.

█ LeVien relies primarily on *R. S.* 30:4–78 which provides in part:

"The state house commission shall likewise fix the rate or rates to be paid for the maintenance and clothing of the convict and criminal insane in any state institution, which rate or rates shall be paid by the state in the case of state patients, and in the case of county patients, the same rate or rates shall be paid, to be divided between the state and county in the proportion of three on the part of the state and two on the part of the county."

---

[3] We note that the interval from the commission of the crime to the filing of a complaint or indictment may, in special circumstances, *i. e.*, offending fundamental fairness, be subject to a claimed constitutional right. See Note, "The Right to a Speedy Criminal Trial," 57 *Colum. L. Rev.* 846, 862 (1957) ; Note, "Justice Overdue, Speedy Trial for the Potential Defendant," 5 *Stan. L. Rev.* 95 (1952). However, the asserted denial of that right could only be interposed in the event the State undertook the prosecution of the crime.

Even in the cases of complaint or indictment, the constitutional right to a speedy trial is only the right to move for such a trial and for a dismissal if the State fails to proceed at the time fixed by the court. *State v. Coolack,* 43 *N. J.* 14, 16 (1964) ; *State v. Masselli,* 43 *N. J.* 1, 12 (1964) ; *State v. Smith,* 10 *N. J.* 84, 93 (1952) ; *R. R.* 3:11–3(b).

Contrary to defendant's position, this section was enacted in order to settle the relationship between the State and county regarding moneys paid for maintenance of *indigent* patients. The original title to this section so states, *i. e.*, "Relation Between State and County Regarding Moneys Paid For Maintenance of Indigent Patients." *L.* 1918, *c.* 147, § 501, *p.* 399.

 *N. J. S. A.* 30:4–60, 66 and 80.1[4] make clear that the cost of maintenance of patients admitted or committed to a charitable institution pursuant to *Title* 30 is to be borne by the financially able patient or certain members of his family. *Cf. In re Truslowe*, 42 *N. J. Super.* 23 (*Juv. & D. R. Ct.* 1956). Moreover, the Department of Institutions and Agencies has so interpreted this statute. Indeed, plaintiffs inform us that there are patients now confined at the Trenton State Hospital who were unable to stand trial, or who were exempt from prosecution, or who were transferred from confinement under sentence, all of whom are contributing, to the extent able, to the cost of their maintenance.[5]

---

[4] Section 60 provides:

"If the court shall determine that the patient is insane and has sufficient estate to pay for his full maintenance as fixed by the board of managers or board of chosen freeholders, as the case may be, * * *, the court, after determining the legal settlement of such patient may, in its discretion, commit such patient to any State or county institution for the care and treatment of the insane in this State."

Section 66 provides:

"Every patient supported in a State charitable institution shall be personally liable for his maintenance and for all necessary expenses incurred by the institution in his behalf * * *."

Section 80.1 provides:

"Every charitable institution maintained in whole or in part by State or county funds, to which persons have been or may be committed or admitted by virtue of Title 30 of the Revised Statutes, shall have a lien against the property of persons confined or who had been confined therein, for the total cost of the care and maintenance of the patient in such institution at the per capita cost rate of maintenance fixed in accordance with law."

[5] The principle is well established that practical interpretation by an administrative agency is entitled to great weight in construing statutes in order to ascertain their meaning, to explain a doubtful phrase or to illuminate any obscurity. *In re Borough of Glen Rock*, 25 *N. J.* 241, 246 (1957); *Lane v. Holderman*, 23 *N. J.* 304, 322 (1957).

One whose route to a charitable institution has been tainted by a criminal proceeding occupies neither a unique nor a preferred position. The concept of forcible detention so obviously present in the case of one subjected to a criminal proceeding applies equally to a patient not similarly experienced. The Legislature did not intend to exempt from liability for maintenance "criminal" patients while requiring civil patients to bear this financial obligation. Such a result would be illogical and inequitable.

No one contends that the State should not support a needy patient whether criminally or civilly committed. But neither should the State nor its taxpayers be burdened with the cost of maintaining one who is financially able to pay.

Affirmed.

PROCTOR, J., concurs in result.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.