235 N.J. Super. 127 (1989)
561 A.2d 674
HARRY A. BAUER, PLAINTIFF,
v.
ANTHONY MIGLIACCIO, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Cape May County.
February 10, 1989.
*129 Joseph W. Clarke, Jr., for Plaintiff (Joseph W. Clarke, Jr., a Professional Corporation)
*130 Philip G. George for Defendants (Mairone, Biel, Gould, Zlotnick, Feinberg and Griffith, P.C.)
GIBSON, J.S.C.
This is an action by a judgment creditor who sought to partition certain properties previously owned by the debtor and to collect a proportionate share of the rents and profits. Plaintiff also requested that the court set aside a 1983 transfer of one of the properties which had occurred following the entry of plaintiff's judgments. At trial plaintiff indicated his willingness to abandon the partition claims without prejudice and to pursue instead his claim for one-half of the rental values. In turn, the debtor agreed that the 1983 transaction should be treated as a nullity, at least as to plaintiff. The matter was then tried without a jury, at the conclusion of which the court reserved decision in order to permit the attorneys to submit post-trial briefs. The following represents this court's findings of fact and conclusions of law.

FINDINGS OF FACT
Plaintiff Harry A. Bauer is a judgment creditor of defendant Anthony Migliaccio (debtor). Mr. Bauer's judgment was obtained in December 1982 and as of April 26, 1985, the amount remaining due was $137,633.41 plus $178.50 in costs. Mr. Bauer obtained Writs of Execution on his judgment and ultimately there was a sheriff's sale of the two pieces of real estate in which the debtor had an interest. One of the properties is known as 1128 Simpson Avenue, Ocean City, New Jersey, and was previously owned by the debtor's mother, Esther. In September 1968 she deeded her interest to herself and to the debtor as joint tenants with a right of survivorship. Esther Migliaccio is now in her eighties. In June 1983 Esther Migliaccio, the debtor and his wife, Charlotte Migliaccio, attempted to transfer their interest to Esther and the debtor's three children, namely, Marie Ann, Carla and Anthony, Jr. It was that transaction which plaintiff claimed was fraudulent and which defendant *131 has now stipulated should be void as against plaintiff. The other property involved is 937 Pelan Avenue, Ocean City, New Jersey. That property was owned by the debtor as a tenant by the entirety with his wife, Charlotte, and they both still occupy that property as their marital home.
As a result of the Writs of Execution previously referred to, a sheriff's sale was held in April 1985, at which point plaintiff acquired the debtor's interest in the above properties. Sometime thereafter, counsel for plaintiff contacted counsel for Mr. Migliaccio and a claim was made for compensation representing Mr. Migliaccio's use of the property. Although it is not clear exactly when that first contact was made, Exhibit P-4 makes reference to a letter from Mr. Bauer's attorney dated March 17, 1986. That letter apparently did not contain a formal demand for possession, but it is clear that plaintiff's counsel was asserting a claim for a share of the rental value. No resolution of the problem occurred at that time and counsel for both sides continued to try to settle the dispute.
On November 21, 1986, plaintiff's counsel wrote to counsel for the debtor and made a formal demand for possession. Although that demand was rejected, discussions continued regarding the possibility of deeding one of the two properties over to plaintiff as satisfaction for the entire debt. It was always clear that the properties were not capable of joint occupancy since each is a single-family residence. The Simpson Avenue property is occupied by defendant's elderly mother and the Pelan Avenue property is occupied by the debtor and his wife. Neither property generates any income, although obviously they have rental value.
The testimony at trial supports the conclusion that the Pelan Avenue property had a rental value of $625 per month for the year 1988, $600 per month for the year 1987, $575 for the year 1986 and $550 for the year 1985. The Simpson Avenue property had a rental value for 1988 at $600 per month, $575 per month for 1987, $550 per month for 1986 and $525 per month *132 for 1985. Although the expenses against these properties were not recited with precision, evidence was admitted reflecting the 1988 real estate taxes for Simpson Avenue at $1,051.80 and $1,158.34 for Pelan Avenue. Both properties were listed as having a repair and maintenance cost of $500 per year. Other expenses such as water, sewer and electric were also claimed but those expenses are the responsibility of the tenant/occupant. No expenses were listed for the earlier years but plaintiff offered to stipulate that the same figures would apply from 1985 forward. This court therefore will assume that to be true.
Although testimony was submitted regarding the market value of each of the properties, the valuations were confined to 1988 and no appraisal was offered as to their value in 1985 or thereafter; nor was there any testimony as to the value of the interest that Mr. Bauer obtained when he acquired the debtor's rights through the sheriff's sale which occurred in 1985.
Before concluding the factual findings, mention should also be made of the fact that at one point plaintiff obtained a wage execution against Mr. Migliaccio. Since the time of the execution (February 15, 1984) ten percent of Mr. Migliaccio's salary has been deducted and paid over to counsel for plaintiff. It is not clear as to exactly what the total amount of that collection has been over the last four and a half years; nor is it clear exactly what the interest accumulation has been on the total judgment. Up to now, however, no credit has been given against the judgment as a result of the wage execution or the sales.

CONCLUSIONS OF LAW
As previously indicated, plaintiff initially demanded the partition of the two properties and sought to set aside a transfer of Mr. Migliaccio's interest in the Simpson Avenue property which had occurred in 1983. Both of these claims were withdrawn by stipulation and the debtor agreed that the 1983 conveyance is void. What remains is an action for an accounting as to rents *133 and profits, a declaration as to plaintiff's interest in the two properties and a determination of the amount still due on the judgment.

Pelan Avenue
The landmark cases dealing with the rights of a judgment creditor as against the interest of a debtor who holds property as a tenant by the entirety are King v. Greene, 30 N.J. 395 (1959) and more recently Newman v. Chase, 70 N.J. 254 (1976). Those cases make it clear that upon an execution sale initiated by the judgment creditor the creditor acquires the right of survivorship of the debtor as well as the interest of the latter in the life estate for the joint lives of both spouses. Newman v. Chase, id. at 260. It is also clear that although the judgment creditor then becomes a tenant in common with the non-debtor tenant, partition is by no means automatic and where the property is a single-family residence the presumption appears to be to the contrary. Although there is no automatic right of partition in such a setting, the creditor is nevertheless entitled to the alternative equitable remedy of an accounting from his co-tenant for a share of the rents, issues and profits. Newman v. Chase, id. at 267; Lohmann v. Lohmann, 50 N.J. Super. 37 (App.Div. 1958).
Where, as here, the property involved is a residence as opposed to a commercial property, the only benefit inuring to the tenant not in possession is the value of the use and occupancy; in effect, the imputed rental value of the home.
.... As a general rule, since each cotenant has an undivided interest in the whole estate, each is entitled to occupy the entire property. Thus, absent ouster of the other cotenants, a cotenant in possession is not required to account to them for the value of use and occupation. We think, however, that where one cotenant, with her family, remains in possession of a one-family house which is not susceptible of joint occupancy, and refuses to accede to plaintiff's demands for access to the property, such conduct clearly constitutes an ouster. [Newman v. Chase, 70 N.J. at 267; citations omitted.]
Based on the above, plaintiff's sheriff's deed made him a tenant in common with a right of survivorship with respect to the *134 debtor's marital residence (Pelan Avenue). Assuming there was an "ouster," plaintiff also acquired the right to an accounting for the rents, issues and profits. The question then becomes if and when an ouster occurred.
The sheriff's deed transferring the debtor's interest to Mr. Bauer occurred on April 26, 1985. Although a Writ of Execution had been issued much earlier, no effective execution occurred until then. Even at that point, however, there was no demand for possession or any other evidence of an ouster. The first formal demand for possession did not occur until November 21, 1986. See P-1 Ev. On the other hand, it is clear that plaintiff's counsel demanded a share of the rental value of the property as early as March 17, 1986. See P-4 Ev. It is also clear that, since the property is not capable of joint occupation, a demand for occupancy would probably have been futile in any event. Nevertheless, equity supports the notion that a co-tenant in possession should at least have the option of choosing to vacate or permitting possession before the negative consequences of a refusal attach. Stated differently, although the likelihood of a judgment debtor's acquiring possession of a single-family home while the non-debtor co-tenant is still living there seems unlikely, it is not unfair to impose on the creditor the burden of at least making such a demand and thereby giving the co-tenant the option of choosing to vacate before an obligation to account accrues.
Although in this case no formal demand for possession was made until November 1986, a demand for a share of the rental value was made back in March. The formality of plaintiff's demand should not be critical so long as the position of the parties is made clear. Here, those positions were made clear in March and accordingly I am satisfied that counsel's rejection of plaintiff's demands constituted an ouster. See P-4 Ev. Logic might suggest that the sheriff's deed itself was sufficient to generate an immediate entitlement to share in the rental value, but a fair reading of Newman v. Chase, supra, *135 does not support that conclusion. Some form of ouster is still a precondition to any entitlement to rents and profits. Id. at 267. It is the conclusion of this court, therefore, that as to Pelan Avenue plaintiff became a tenant in common with a right of survivorship at the time that he received the sheriff's deed. Once there was an ouster, which in this case took place in March 1986, he also became entitled to one-half of the net value of the rents and profits. Newman v. Chase, id. at 267.

Simpson Avenue
There is a separate question as to whether plaintiff's interest in the Simpson Avenue property should be treated in the same way. The debtor's interest there was that of a joint tenant with a right of survivorship, not as a tenant by the entireties. It has long been held that such a tenancy will be "severed" and converted into a tenancy in common by a transfer of one of the joint tenant's interest to a stranger. Cunningham, The Law of Property (1984), § 5.3, at 205. That conversion also results in a loss of the right of survivorship. The same consequences flow where the transfer is involuntary, such as in the case of an execution sale. Id. § 5.2, at 210; 2 American Law of Property (1952), § 6.2, at 10. Thus, at the time of the sheriff's sale here, plaintiff acquired an undivided one-half interest in the Simpson Avenue property as tenant in common. Although he acquired no right of survivorship, he nevertheless obtained the right to partition as well as the right to share in the rental value in the event of an ouster. Cunningham, Law of Property, supra at §§ 5.8, 5.12; Baird v. Moore, 50 N.J. Super. 156, 165 (App.Div. 1958).
In this case, plaintiff abandoned his claim for partition and instead sought a share of the rents and profits. This court must therefore re-examine the issue of whether there was an ouster. As already indicated, unless there was an ouster by the co-tenant in possession, plaintiff would not be entitled to share the rental value. The only evidence submitted on this issue *136 was the reference to plaintiff's letter of March 17, 1986, and the subsequent demand for possession on November 21, 1986. The March 17, 1986, letter was never actually introduced, but it has been assumed that it contained a demand for a share in the rental value of both properties. Although we know the demand was rejected, that rejection contained no indication that the author also represented Esther Migliaccio. See P-1 Ev. Nor is there any proof of a demand being communicated directly to her. Plaintiff's counsel argues that he assumed that Mr. Migliaccio's attorney also represented Esther's interests, but I find that argument unpersuasive.
Nothing has been submitted to indicate that a lawyer-client relationship existed between Eric Browndorf (debtor's former attorney) and Esther Migliaccio, at least not until this lawsuit was filed. Counsel's letter of March 21, 1986, refers to Esther as "my client's mother." It also includes a comment on what she said she was willing to do, but I am not satisfied that such a reference can reasonably be taken as a statement of representation by counsel. At that point plaintiff's counsel was obligated to either communicate directly with Esther or obtain confirmation that Mr. Browndorf represented her. He did neither. It is important to remember that what is involved here is a claim for rents, not from the debtor, but from the co-tenant. It is, after all, the co-tenant who still has the title interest. Accordingly, if an ouster occurred, it could only have come from the tenant with title, in this case the debtor's mother.
Based on the above, I am satisfied that none of the communications relied on constituted an ouster with respect to the Pelan Avenue property. Indeed, no ouster occurred until this lawsuit was filed. Even the lawsuit did not include a demand for possession. On the other hand, the pleadings clearly included a demand for rent, which all defendants rejected. At that point counsel's representation of Esther Migliaccio was clear. However, since this suit wasn't started until March 2, 1988, plaintiff's entitlement to one-half of the net rent would not have accrued until then.

*137 Rental Value

Applying the above reasoning to the proofs regarding the rental values, it would appear that the fair rental values on the Pelan Avenue property were as follows: 1988  $625 per month; 1987  $600 per month, and 1986  $575 per month. For Simpson Avenue, the only relevant year is 1988 and the fair rental value for that property was $600 per month. Against those values one must deduct defendant's carrying costs, namely, real estate taxes, repairs and maintenance. Those sums amounted to $1,658.34 for Pelan Avenue and $1,551.80 for Simpson Avenue. Those figures are computed as follows:

 I. Pelan Avenue
 Income:
 1988 - 12 × $625 = $7,500.00
 1987 - 12 × $600 = 7,200.00
 1986 - 9 × $575 = 5,135.00 $19,835.00
 _________
 Carried Forward $19,835.00
 Expenses:
 1988 - $1,658.34
 1987 - 1,658.34
 1986 (9 months) 1,243.75 4,560.43
 _________ __________
 Net Gain $15,274.57
 Plaintiff's One-half Share $ 7,637.28
II. Simpson Avenue
 Income:
 1988 - 10 × $600 = $ 6,000.00
 Expenses:
 1988 - (10 months) 1,293.16
 __________
 Net Gain $ 4,706.84
 Plaintiff's One-half Share $ 2,353.42
 Plaintiff's share from the
 Simpson Avenue property $2,353.42
 Plaintiff's share from the
 Pelan Avenue property 7,637.28
 _________
 Total Amount Due $9,990.70

*138 Effect on Judgment

Left open by the above analysis is the impact of the 1985 sheriff's sale on plaintiff's judgment. Stated differently, given the ownership interest acquired by plaintiff as a result of the execution and sales, should the prior judgment be reduced by the value of that transfer? Although neither party has addressed this question and no proofs were presented which would permit the issue to be resolved, I am satisfied that equity requires that judgment be proportionately reduced. Since the testimony regarding current market value is of no help, an evaluation will be required of the interests plaintiff acquired as of April 26, 1985. Although those values may be difficult to calculate, particularly with respect to Pelan Avenue, it is a step which fairness requires. Both parties will therefore be directed to submit further proofs on this subject on a post-judgment basis. Those proofs must be submitted within 45 days of the order which will follow this opinion.

CONCLUSION
It is the judgment of this court that as of April 26, 1985, plaintiff became the owner of an undivided one-half interest as a tenant in common, subject to a right of survivorship, with respect to the debtor's residence (Pelan Avenue). He also acquired an entitlement to rents and profits once there was an ouster. Since that ouster occurred in March 1986, the proofs demonstrate that plaintiff is now entitled to an award of $7,563.28 (as of January 1, 1989). As for Simpson Avenue, the home of the debtor's mother, plaintiff became a tenant in common with Esther. Although he acquired an undivided one-half interest, he has no right of survivorship. Plaintiff also became entitled to share in the rental value once there was an ouster but in this instance no ouster occurred until this lawsuit was filed. Plaintiff's judgment against Esther Migliaccio is therefore limited to $2,353.42. In addition to these awards, both of the non-debtor co-tenants will have an ongoing obligation *139 to pay one-half of the net rental values for as long as the ousters continue.
Counsel will be required to submit further proofs with respect to the credits against the judgment, which should have occurred in April 1985. Those credits will be based on the fair market value of the interests acquired by plaintiff at that time, as well as the amount recovered to date because of the wage execution.
Counsel for plaintiff shall submit an order consistent with the above.