607 A.2d 1077

**The HOWARD SAVINGS BANK, Appellant,**

v.

**Alan COHEN and Marilyn Cohen.**

Superior Court of Pennsylvania.

Argued Jan. 8, 1992.

Filed April 13, 1992.

Reargument Denied June 17, 1992.

Gerald M. Hershenson, Langhorne, for appellant.

Andrew L. Miller, Philadelphia, for appellees.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

The Howard Savings Bank appeals the trial court's Order denying its motion for post-trial relief after the court found appellant could not execute upon property held as tenants by the entireties by appellees, Alan and Marilyn Cohen.

Appellant loaned Alan Cohen (Alan) $50,000 as working capital in a corporate venture. The venture later required an additional $100,000, which Alan obtained by signing another promissory note. At appellant's request, Marilyn Cohen (Marilyn) executed a guaranty for the full amount of the second loan. Alan did not co-sign this guaranty, which was a completely separate contract from Alan's promissory notes. This guaranty, drafted by the New Jersey bank, expressly provided "[t]he guaranty and all rights and obligations under it shall be interpreted according to the laws of the State of New Jersey." After the interest payments ceased due to Alan's illness, appellant sought to have appellees execute two new notes with Marilyn signing as a joint obligor. Appellees refused this request and appellant made demand for repayment on the two notes. On January 29, 1990, after the parties agreed Alan had defaulted on the loan, the trial court entered a verdict, later reduced to judgment, against each appellee in the amount of $202,-871.05 plus interest. Thereafter, a 60–day moratorium against enforcement was agreed to by the parties to allow the court to determine whether the judgment could be satisfied by levying against property located in Pennsylva-

nia and held by appellees as tenants by the entireties. The trial court held the judgments against appellees were not a joint debt and, therefore, appellant could not execute upon property held as tenants by the entireties.

■ Appellant argues the obligations of appellees under the promissory notes and guarantees should be interpreted under Pennsylvania law, which, according to appellant, treats a guarantor as a surety or co-obligor so that Pennsylvania law allows a judgment against appellees as joint debtors to be satisfied by executing against tenancy by the entirety property. Appellant also contends even assuming New Jersey law applies, the debt still should be treated as a joint obligation.

We agree with the trial court both Alan's promissory notes and the guaranty signed by Marilyn state unequivocally that they are to be governed by New Jersey law. Therefore, appellant's reliance on *In re Bialon,* 67 B.R. 451 (W.D.Pa.1986), in arguing the contract signed by Marilyn was a suretyship, is clearly misplaced. Appellant now argues the guaranty should be treated as a Pennsylvania document which is governed by Pennsylvania law because Marilyn signed the agreement in Pennsylvania. This absurd proposition fails when we note it was appellant who drafted the unambiguous choice of law provision in the guaranty. The separate nature of the contracts involved herein is also demonstrated by the fact that none of the three contracts were co-signed by the appellees and each contract was executed months apart from the others.

■ Appellant next contends under New Jersey law there is no substantive distinction between a suretyship and a guaranty. Appellant does not directly support this proposition but instead cites various New Jersey cases dealing with general principles regarding co-guarantors. *See McCarthy v. Schwalje,* 234 N.J.Super. 396, 560 A.2d 1283 (1988); and *D'Ippolito v. Castoro,* 51 N.J. 584, 242 A.2d 617 (1969). Under New Jersey law, the maker and guarantor of a debt may not be found jointly liable. *Saskel v. Rubin,*

125 N.J.L. 68, 13 A.2d 553 (1940); *Smith v. Dowden,* 92 N.J.L. 317, 105 A. 720 (1919). In contrast, the maker and surety of a debt may be found jointly liable. *Black's Law Dictionary,* 5th Ed., 1979, sets forth the relevant distinctions between a guarantor and a surety:

A surety is usually bound with his principal by the same instrument, executed at the same time.... He is an original promisor and debtor from the beginning.... On the other hand, the contract of guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal.... The original contract of the principal is not the guarantor's contract.... The *surety* joins in the same promise as his principal and is *primarily* liable; the *guarantor* makes a separate and individual promise and is only *secondarily* liable. "Surety" and "guarantor" are both answerable for debt, default, or miscarriage of another, but liability of guarantor is, strictly speaking, secondary and collateral, while that of surety is original, primary, and direct. In case of suretyship there is but one contract, and surety is bound by the same agreement which binds his principal, while in case of guaranty there are two contracts, and guarantor is bound by independent undertaking.

*Id.* (citation omitted).

 The final issue is whether appellant can execute, pursuant to individual judgments against appellees, upon Pennsylvania property held by appellees as tenants by the entireties. Under New Jersey precedent, where a husband and wife hold land by the entireties, judgment creditors of either spouse may levy and execute upon such spouse's separate right of survivorship. *King v. Greene,* 30 N.J. 395, 153 A.2d 49 (1959). The New Jersey Supreme Court in *King* reasoned there is "no compelling policy reason why a judgment creditor should be inordinately delayed, or, in some instances completely deprived of his right to satisfaction out of the debtor-spouse's assets." *Id.* at 413, 153 A.2d at 60. More recently, in *Freda v. Commercial Trust Co.,*

118 N.J. 36, 570 A.2d 409 (1990), and *Bauer v. Miglioccio,* 235 N.J.Super. 127, 561 A.2d 674 (1989), the courts have affirmed the rule announced in *King.* The trial court, however, correctly notes that in the above New Jersey cases where the judgment creditors were allowed to execute upon tenancy by the entireties property, the property in question was New Jersey property. Here, we are presented with a case involving Pennsylvania real estate owned by Pennsylvania residents. Therefore, even though we concede New Jersey law governs the terms of both promissory notes and the guaranty, we will not apply this New Jersey precedent to the enforcement of these respective debts.[1]

■ In Pennsylvania, the only case directly on point is *Blusiewicz v. Rosenfield,* 33 Pa.D. & C.2d 470, 84 Montg. 40 (1964), which held a judgment entered against a husband and wife individually does not give rise to a valid lien against real estate held by them as tenants by the entireties. It is also settled principle a husband and wife do not own separate interests in entireties property which can be reached by their individual creditors. *Stop 35, Inc. v. Haines,* 374 Pa.Super. 604, 543 A.2d 1133 (1988). Execution upon the property in question would lead to a sheriff's sale, which would divide the entireties property. This division would conflict with the principle that one cannot execute upon a judgment as long as the entireties property is not destroyed.

We affirm the trial court's Order of August 30, 1990 which denied appellant post-trial relief thereby preventing it from executing on the judgments obtained against appellees as the property against which execution is sought is held by appellees as tenants by the entireties.

Order affirmed.

CIRILLO, J., dissents.

1. We do not dispute that if appellant had obtained judgment in a New Jersey court and if appellees' property was located in New Jersey, appellant could execute against the survivorship interest of either or both of the appellees.

CIRILLO, Judge, dissenting:

I respectfully dissent from the majority's opinion. I write separately in order to address the majority's decision which, in my opinion, adheres far too rigidly to elements of tenancy by the entireties, without regard for the unjust results in this case.

Initially, I will re-examine the facts, as it appears there are some inadvertent discrepancies in both the trial court and majority opinions. Appellee Alan Cohen ("husband") owes appellant The Howard Savings Bank ("bank") a total of $202,871.05 as the result of two loans. Both the bank and the Cohens have stipulated to this amount and judgment has been entered accordingly.

In order to finance a business venture, husband borrowed the necessary funds from the bank. Husband signed a promissory note on October 5, 1984. This contract allowed him to borrow up to $50,000.00 which would be advanced to him as needed. No one co-signed this promissory note. On the same day, however, Marilyn Cohen ("wife"), at the bank's request, signed a separate instrument, a guaranty, which stated: "I guaranty the Borrower [husband] will punctually pay whatever he owes the Bank *now or later*." (emphasis added). Husband did not co-sign this guaranty. Several months later when husband needed additional capital for his business, he requested that the bank increase his credit line. The bank agreed to lend him the additional funding if he would sign an additional promissory note. On May 23, 1985, husband signed a second promissory note. This contract allowed him to borrow up to $150,000.00 which again would be advanced to him as needed. No one co-signed this second promissory note. Both notes and the guaranty clearly stated that the contracts were to be governed by the laws of New Jersey.[1] In 1987, husband

---

1. The promissory notes and guaranty read in pertinent part as follows:

 APPLICABLE LAW: This note will be governed by the law[s] of the State of New Jersey.

stopped paying the interest on the loans [2] and the bank requested that he renew the two promissory notes and that wife co-sign the notes. Husband and wife refused. Consequently, the bank made demand for repayment on the two notes, which was authorized under the contracts.

After a lengthy procedural delay, the bank and the Cohens agreed that husband had defaulted on the loans and that he owed the bank $202,871.05. On January 29, 1990, the parties stipulated before the Court of Common Pleas of Montgomery County that judgment would be entered against husband and wife individually in the amount of $202,871.05, plus interest to accumulate at $49.51 per diem. The trial court so held.[3] Subsequently, after the bank filed a praecipe, the trial court entered judgment. The parties also stipulated to a sixty day moratorium against enforcement to permit the trial court sufficient time to determine whether the bank could execute its judgment against property located in Pennsylvania and held by the Cohens as tenants by the entireties.

After considering the complexities of the situation, the trial court determined that the bank could not satisfy its judgment by executing against the Cohens' Pennsylvania property. The court reasoned that since judgment was entered in the full amount against each spouse individually, the debt was not a joint debt. Therefore, the Pennsylvania

**2.** Husband suffered a heart attack on December 6, 1987. He did not make any interest payments after the onset of his illness.

**3.** The parties stipulated to the amount of money owed and the judgment was entered individually against husband and wife in Pennsylvania. However, this was done pursuant to the laws of New Jersey as the contracts were governed by those laws. The promissory notes provided for payment. Both promissory notes state, "If I do not pay any amount when due under this note or under any of my other debts to the Bank Bank may sell any of the collateral at any price the Bank believes best, for cash or on credit, to anyone including the Bank itself without any notice to me, and apply the proceeds of the sale to pay any or all of my debts to the Bank." Therefore, the promissory notes were called in under their own terms which are governed under New Jersey law. Thus, this case has been brought before the courts of this Commonwealth in order to enforce the judgment against Pennsylvania property pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306.

property was not subject to levy, as only joint debts can be satisfied with property held in tenancy by the entireties. *Sterrett v. Sterrett*, 401 Pa. 583, 166 A.2d 1 (1960). Thereafter, the bank filed post-trial motions. The motions were denied and this appeal followed. The bank now requests this panel to consider whether it can enforce its judgment against the property held by the Cohens as tenants by the entireties.

On appeal the bank initially contends that the interpretation of and execution on this contract is governed by the laws of Pennsylvania. In support of its assertion the bank cites the fact that husband and wife are Pennsylvania residents, the contract was signed in Pennsylvania and the property they seek to levy against is in Pennsylvania. However, the bank is confusing two separate choice of law principles. Generally, absent a choice of law provision in the contract, a contract is governed by the law of the state in which the contract is signed. *See* Restatement, Second, Conflict of Laws § 188.

The two promissory notes husband signed and the guaranty wife signed, however, state unequivocally that they are to be governed by the laws of New Jersey. In interpreting the intent of the parties in a written contract, when the words are clear and unambiguous, as in this case, the intent is to be determined only from the express language of the agreement. *Scherer v. Nash*, 405 Pa.Super. 37, 591 A.2d 1086 (1991); *Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308 (1991). To do otherwise would undermine the integrity of written contracts. *See Gianni v. Russell*, 281 Pa. 320, 126 A. 791 (1924). Conversely, if the language of the contract is ambiguous and unclear, a written agreement is to be construed against its drafter, which in this case is the bank. *Warren, supra; Ormond Realty v. Ninnis*, 341 Pa.Super. 101, 491 A.2d 169 (1985). Therefore, the laws of New Jersey, not Pennsylvania, govern the contracts and the debt incurred by the Cohens. The contracts are to be executed under New Jersey law and, consequently, questions or disputes concerning the contract or the debt, are to

be resolved under New Jersey law. Indeed, a review of the record indicates that the loans were extended according to New Jersey law, husband's default was stipulated to under New Jersey law, husband's default was stipulated to under New Jersey law, and the loans were called in under New Jersey law. Moreover, the debt was reduced to judgment under New Jersey law. Now that the bank has a judgment to enforce, it seeks to levy against real estate located in Pennsylvania.

Although the laws of New Jersey govern the contracts and the debt, the laws of Pennsylvania govern execution of any judgment, against real estate located in this Commonwealth. It is well established that the courts of Pennsylvania have jurisdiction over the land situated within the Commonwealth, even if a person owning or claiming an interest in the land is not personally subject to the jurisdiction of the Pennsylvania courts. 42 Pa.C.S. § 5302; *Alpern v. Coe*, 352 Pa. 208, 42 A.2d 542 (1945). This case involves real estate located in Pennsylvania and owned by Pennsylvania residents as tenants by the entireties. Therefore, although New Jersey law governs the contracts and debt, it does not govern the execution of the judgment against real estate located outside the state of New Jersey. The issue of whether or not the bank can execute against property in Pennsylvania held by the Cohens as tenants by the entireties can only be determined under the laws of Pennsylvania.

To understand the dilemma posed by the parties on the facts of this case, one must first comprehend the nuances of tenancy by the entireties. Tenancy by the entireties is a "unique form of co-ownership grounded in the common law concept that husband and wife were but one legal entity." *Clingerman v. Sadowski*, 513 Pa. 179, 519 A.2d 378 (1986). Essentially, a tenancy by the entireties is based on the uniqueness and unity of the marital relationship. *Id.* The distinguishing feature of this type of ownership is that a husband and wife individually own the entire or whole property, and not a one-half or a divisible portion. *Id.*

Justice Musmanno offered an illustrative analogy for this type of ownership:

> Husband and wife own an estate in entireties as if it were a living tree, whose fruits they share together. To split the tree in two would be to kill it and then it would not be what it was before when either could enjoy its shelter, shade and fruit as much as the other.

*Sterrett,* 401 Pa. at 585, 166 A.2d at 2.

Given such unity, neither spouse may deprive the other spouse of the use or enjoyment of the entireties property, and neither spouse may sever or encumber the estate without the consent of the other spouse. *Schweitzer v. Evans,* 360 Pa. 552, 63 A.2d 39 (1949). Neither spouse, alone, may convey the entireties property, *Clingerman, supra,* and an entireties estate may only be terminated by a joint act of the husband and wife. *In re Gallagher's Estate,* 352 Pa. 476, 43 A.2d 132 (1945).

At common law, under the concept of coverture, husband and wife were considered one, but with the legal identity of the wife merging into that of her husband. *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975). Society presumed that it was the husband's duty to provide his wife with a home and the requisite household goods. *Id.* Therefore, as married women were not legally capable of owning property in their own names until the nineteenth century,[4]

**4.** In Pennsylvania, married women's rights were advanced under the Married Women's Property Acts. Act of May 23, 1887, P.L. 170, and Act of June 8, 1893, P.L. 344 Sec. 1 (48 P.S. § 31). The Act of 1893 permitted married women to lease, sell, and own their real estate, but, also, stated that married women could not "execute or acknowledge a deed or other written instrument conveying or mortgaging her real property unless her husband joined in such mortgage or conveyance." Act of June 8, 1893, P.L. 344, 48 P.S. § 32; *Ladner on Conveyancing* 59 (4th ed.). The Act of 1957 equalized a married woman's rights with these rights of a married man: a married woman "shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage any property of any kind, real, personal or mixed, either in possession or expectancy, or to make any contract in writing or otherwise, and may exercise the said right and power in the same manner and to the same extent as a married man." A woman's rights were further enhanced in 1971 with the Equal

the husband owned the property, both real and personal. *Id.* To afford a woman, who had few property rights, some measure of protection from the possibility of losing her home due to a husband's reckless actions, the concept of tenancy by the entireties was created. *Id.; see also Wallaesa v. Wallaesa,* 174 Pa.Super. 192, 100 A.2d 149 (1953). This type of ownership preserved the tenancy even if the husband incurred debts and his creditors attempted to seize the marital home in lieu of payment. *See Amadon v. Amadon,* 359 Pa. 434, 59 A.2d 135 (1948). Also, it protected entireties properties from being conveyed to a third party by one spouse without the other spouse's consent. *See Backus v. Backus,* 464 Pa. 380, 346 A.2d 790 (1975); *see also Fascione v. Fascione,* 272 Pa.Super. 530, 416 A.2d 1023 (1979).

When the Married Women's Property Acts were enacted in several states in the late nineteenth century, *see* footnote four, *supra,* there was a question as to the continued need for tenancy by the entireties. *Wallaesa, supra.* Women no longer required legal protection as they had achieved the same property rights as their husbands. Today, of course, husbands and wives are regarded as two separate and distinct individuals in all but one area of the law. Pennsylvania chooses to retain the common law concept of tenancy by the entireties, which views a husband and wife as a single entity. *DiFlorido, supra; see Madden v. Gosztonyi,* 331 Pa. 476, 200 A. 624 (1938).

Here, I find the majority's strict adherence to the traditional attributes of tenancy by the entireties unwarranted. In this case it only serves to enable husband and wife to avoid payment of a debt. Husband and wife are *each* individually responsible for the debt by virtue of the promissory notes and guaranty. The majority, however, denies the bank execution of judgment on the entireties property on the basis that the Cohens are not jointly obligated. Such an anomalous interpretation is misguided and undermines

Rights Amendment to the Pennsylvania Constitution. *See* Pa.Const., art. I, § 28.

the very purpose for which tenancy by the entireties was created. Application of the common law principle in this case allows one spouse, or both spouses, individually, to protect their jointly held property. Tenancy by the entireties was never intended to work such an inequity, and I therefore register my disagreement with the majority's analysis and result.