844 A.2d 531

HAROLD G. BOE, PLAINTIFF–APPELLANT, v. DEPARTMENT
OF HUMAN SERVICES, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 1, 2003—Decided March 25, 2004.

Before Judges KESTIN, AXELRAD and WINKELSTEIN.

*James M. Bell,* attorney for appellant.

*Peter C. Harvey,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Amina Maddox,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Plaintiff, Harold G. Boe, filed a complaint seeking a judgment declaring: 1) that an institutional lien on a parcel of real property had been extinguished upon the death of Mary Boe (decedent), plaintiff's mother; and 2) that title in the premises was vested in plaintiff entirely free of defendant's institutional lien by reason of plaintiff's joint ownership of the parcel with the right of survivorship. On cross-motions for summary judgment, the trial court dismissed the complaint, declared the lien to be valid, and held that the estate of the decedent was liable for the costs of the care and maintenance furnished her by a State institution. We affirm.

Before May 16, 1996, Mary Boe was the sole owner of the residential property at issue. On that date, she executed a deed transferring title in the property to herself and plaintiff "as joint tenants with rights of survivorship." Also on that date, decedent and plaintiff executed a mortgage on the property securing a $10,808 loan.

On September 20, 1996, the trial court entered a "temporary order for involuntary commitment," on the basis of which decedent became a patient at the Senator Garrett W. Hagedorn Gero–Psychiatric Hospital (the hospital), a State institution, on October 1, 1996. She was seventy-six years of age at the time. Over the course of the next ten-and-a-half months, between October 18, 1996 and August 15, 1997, five orders were entered continuing the placement.

On May 19, 1997, the hospital filed a lien claim, pursuant to *N.J.S.A.* 30:4–80.1, for the costs attributable to the care and maintenance furnished to decedent. The amount of the delinquent maintenance stated in the lien as of April 30, 1997 was $71,160.24. The specified rate of maintenance was $2,063.04 per week. By the time of decedent's discharge from the hospital on August 19, 1997, the amount of the lien was calculated at $82,048.23.

A medical summary stated decedent's discharge diagnoses to be:

Dementia with delusions.

Mild hypercholesterolemia which we did not want to intervene and do anything considering her age.

A psychiatric discharge summary recited her discharge diagnoses as follows:

Axis I: Dementia of the Alzheimer's type with delusions and behavioral disturbances

Axis II: No diagnosis

Axis III: Hypercholesterolemia

Axis IV: No. 4

Axis V: GAF:15–20

The reports characterized decedent as "non-ambulatory" and requiring "total nursing care."

Decedent died on March 6, 2000. She was, at the time, a resident of the Perth Amboy Nursing Home (nursing home).

On July 13, 1999, counsel, on plaintiff's behalf, had sent a letter to the Bureau of Financial Standards and Procedures noting that "[a] recent title search indicates that there is an institutional lien

filed against [decedent] as a result of her confinement at the [hospital]." The letter described decedent's limited resources: "her one-half interest in her home .... [and h]er only source of income [from] Social Security ($900 a month) and a pension from her deceased husband ($417.95 a month)." Counsel enclosed a copy of the May 16, 1996 deed, noting decedent's then current residence in the nursing home and plaintiff's residence in the property. The letter also referred to an application then pending in the Superior Court

> to appoint Harold Boe as guardian over the person and financial affairs of his mother, Mary Boe. As neither Mary Boe or her son, Harold, have any assets to speak of, they intend to sell the house and for the most part use the proceeds for her support and maintenance.

Counsel's letter went on to inquire:

> Would the State of New Jersey consider releasing the lien on this real estate without monetary consideration? If so, would you kindly prepare the appropriate release and forward same to our office.
>
> Alternatively, we ask that the amount of the lien be reduced to the lowest amount acceptable to the State of New Jersey. Upon sale of the residence we will apply the sale proceeds to pay off the agreed upon lien amount.

The State responded on August 11, 1999, in a letter from the Compromise Panel Chairperson and Chief, Bureau of Financial Standards and Procedures, Department of Human Services (Department). The letter noted that the total cost of decedent's care and maintenance was $85,583.98. It stated that the Department would regard counsel's proposal as a compromise offer; it described the procedures for effecting a compromise; and it referred to a "compromise offer fact sheet" that was enclosed for completion. Counsel was instructed also to prepare and submit "[a] separate written compromise offer, which includes the exact amount being offered in compromise, specific reasons for requesting a compromise ... and how an acceptance of the offer will benefit Ms. Boe." The letter also sought information concerning the patient's Medicaid eligibility.

In responding with the requested data on February 22, 2000, counsel stated that plaintiff and two of his brothers were residing in the home; and that, although the property's assessed value was

$155,200, its market value was about $120,000, subject to the mortgage and to tax liens for the years 1996 through 1999. He asserted

> that the enforcement of the [hospital] lien would create an extreme hardship for the destitute Boe brothers as well as for their sick and destitute mother. Given these circumstances we respectfully ask that the amount of the lien be waived, and that the lien be discharged. If your decision is otherwise, we ask that you set a minimal amount required to satisfy this lien.

A few weeks later, counsel advised the Department of decedent's death on March 6, 2000. The Department responded that decedent's passing

> changes any position this Department may have held in connection with the compromise offer you submitted on her behalf.
>
> Please be advised that the statutory obligation of the Department of Human Services to assess charges, lien assets and make recoveries is generally inflexible. The purpose of the compromise procedure is to mitigate against the possible harmful or counter-productive effects of Departmental actions against clients and former clients (i.e. the filing of a lien claim). It is Departmental policy that persons, or entities, other than the client or her financial dependents, not be allowed to benefit from the acceptance of a compromise offer. As our former client is deceased and as there are no financial dependents, considering this case for compromise is in direct conflict with the policies and standards set by this Department.
>
> Furthermore, New Jersey Statutes establish the continuing liability of a patient's estate, specifically *N.J.S.A.* 30:4–74, which states "A patient's estate ... shall be liable for institutional support[.]" * * * Pursuant to the State's institutional lien against Mary Boe, the State of New Jersey must be reimbursed from her estate up to the amount of her institutional debt balance of $85,583.98.

### Counsel rejoined with a letter in which he stated:

> We respectfully disagree with your position.... The premises ... [were] owned by Mary Boe and her son, Harold Boe, as joint tenants prior to the time of her admission to [the hospital] and prior to the time that [the hospital's] lien attached to the property.
>
> The law is clear that if a creditor obtains a lien against less than all co-tenants he may enforce the lien *only* against the interest of the debtor co-tenant. If the parties held as joint tenants and the judgment debtor predeceased the non debtor co-owner the lien will be extinguished. [Citations omitted.]

This litigation ensued.

In deciding the matter on the cross-motions for summary judgment, Judge Pisansky, in an oral opinion, summarized the parties' positions, noting that plaintiff's argument relied on *Bauer*

*v. Migliaccio,* 235 *N.J.Super.* 127, 561 *A.*2d 674 (Ch.Div.1989), as well as *Baird v. Moore,* 50 *N.J.Super.* 156, 165, 141 *A.*2d 324, 328–29 (App.Div.1958); and that

> Defendant has filed a cross-motion for summary judgment dismissing the claim against it as well as finding that the Estate of Mary Boe is liable to the State and that the State has a valid institutional lien against Mary Boe's estate.

The judge denied plaintiff's motion and granted defendant's motion. The result was an order dismissing plaintiff's claims, providing that the decedent's estate is liable for the care and maintenance given to her at the hospital, and decreeing that the "institution lien held by the defendant ... is a valid lien under *N.J.S.A.* 30:4–80.1 *et seq.*"

On appeal, plaintiff renews the arguments advanced to the trial court and contends further that the trial court, in reaching its decision, "ruled on matters not raised by defendant in its pleadings or at any time during the pendency of the action."

The second point plaintiff advances provides no basis for modifying the order from which the appeal has been taken. To the extent the motion judge, in his oral opinion, referred to portions of *N.J.S.A.* 30:4–66, *N.J.S.A.* 30:4–74, and *N.J.S.A.* 30:4–80.1 to –80.7 to establish, in the terms used in plaintiff's brief, "that the State may look to other members of the patient's family to satisfy the State's institution lien[,]" nothing in the entered order disposing of the controversy directly addresses that issue. The order merely denied the relief plaintiff sought, *i.e.,* confirmation of title to the property solely in him; and it recognized the validity of the State's lien against the property interests of decedent and her estate. Whether or not the State had the authority to look to resources belonging to members of decedent's family—beyond the real property that was the subject of the lien—to satisfy its lien claim, was not an issue before the trial court and, despite the motion judge's expressed views regarding statutory requirements, was not decided by the court. *See Do–Wop Corp. v. City of Rahway,* 168 *N.J.* 191, 199, 773 *A.*2d 706, 710 (2001) ("[I]t is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons

given for the ultimate conclusion."). Accordingly, we do not address that question.

In opining on the parties' rights and obligations, the judge cited statutory sources, including *N.J.S.A.* 30:4–66 and *N.J.S.A.* 30:4–74, which address the obligations of patients, their estates, and those chargeable for the patient's support. He went on to note that

State charitable institutions may seek a lien against property of inmates and persons chargeable with support. *See N.J.S.A.* 30:4–80.1.

This statute provides that every charitable institution maintained by the State shall have a lien against property of persons committed by virtue of Title 30 of the Revised Statutes for the total cost of care and maintenance of the patient.

\* \* \* \*

The lien shall be filed in the county of the property and shall immediately attach to and become binding upon all real property in the ownership of the patient or other persons chargeable under said lien in the county wherein said lien is filed. *See N.J.S.A.* 30:4–80.3.

Judge Pisansky's analysis continued:

In *State v. LeVien,* 44 *N.J.* 323[, 209 *A.*2d 97 (1965)], the [Supreme] Court noted that the New Jersey statutes make clear the cost of maintenance of patients admitted into a charitable institution is to be borne by the financially able patient and certain members of his family. [*Id.* at] 330[, 209 *A.*2d at 101].

The Court further opined that no one contends that the State should not support a needy patient whether criminally or civilly committed. But neither should the State nor its taxpayers be burdened with the cost of maintaining one who is financially able to pay. [*Id.* at] 331[, 209 *A.*2d at 101].

Plaintiff argues that the State has merely docketed its judgment with the Superior Court and failed to execute on its judgment lien.

Plaintiff asserts that this lien standing alone would not destroy plaintiff's right of survivorship and plaintiff takes title free and clear of the State lien.

Plaintiff cites *Bauer v. Migliaccio,* [*supra,*] 235 *N.J.Super.* 127[, 561 *A.*2d 674] and *Baird v. Moore*[, *supra,*] 50 *N.J.Super.* [at 165, 141 *A.*2d at 329,] for the proposition that the mere docketing of a judgment does not sever[ ] a joint tenancy and that title passes to the surviving joint tenant free and clear of the judgment lien.

The court finds that plaintiff's argument is without merit. *Bauer* concerns a judgment creditor's right as against a debtor who holds property [as a] tenant by the entirety.

*Baird* concerns a right of contribution among tenants in common for the proportional share of taxes, interest on mortgages and necessary repairs in filing a [final accounting] or [partition] action.

In this matter, decedent incurred [sic] the joint tenant with right of survivorship. The lien against the property is a statutory lien and not a judgment lien.

There has been no final judgment against Mary Boe and in favor of the defendant. Thus, there is no judgment to execute. Rather, defendant obtained an institutional lien against the real property as a method of collection.

The lien was docketed in the Superior Court because that is the procedure the Legislature intended the State to follow.

As the court in *New York Susquehanna and W.R.R. v. Vermuelen*, 44 *N.J.* 491, 504[, 210 *A*.2d 214, 221] (1995 [1965]), noted, the record of a lien with the court clerk serves governmental convenience and does not give judicial power to the executive branch.

Plaintiff further relies on *Cunningham, The Law of Property* (1987), for the proposition that the docketing of a judgment against a joint tenant does not effect a severance.

However, the applicable statute clearly states that a lien shall immediately attach against the property of persons committed or upon any . . real and personal property of the person chargeable by law with support and maintenance of such persons. *See N.J.S.A.* 30:4–80.1 to 80.3.

Mary Boe had no husband and her closest family member, her son, obtained the bulk of the estate, the house[,] through the joint tenancy.

Not only would the lien immediately attach against Mary Boe's real estate or real property but as to her son's interest in the real property as well.

Such lien was perfected by the filing of the Certificate of Death with the Clerk's Office in May of 1997 and gave notice to all third parties that there existed a lien upon [the] property. . . .

The court finds that it is undisputed that there is an amount due and owing to the State for Mary Boe for care received at a State charitable institution.

It is undisputed that the State filed and perfected its institutional lien against the real property of Mary Boe [in] May, 1997.

The court finds that it [is] undisputed that plaintiff, Mary Boe's son and closest family member, is the sole owner of the aforementioned property by way of the joint tenancy with right of survivorship.

The bulk of Mary Boe's real property was the house. . . . As the State has an interest in not having itself nor its taxpayers burdened with the cost of maintaining one who is financially able to pay, the court finds the plaintiff to be a person chargeable for Mary Boe's support and the State is well within its right to look to plaintiff's interest in the home in satisfaction of the outstanding debt.

The court holds that the death of Mary Boe did not destroy the institutional lien against the property as the lien which perfected against plaintiff's real property as well.

Accordingly, as there are no issues of genuine facts in dispute, the court denies plaintiff's motion for summary judgment[,] as [the] joint tenancy with right of survivorship of plaintiff did not terminate the institutional lien against the real property. . .

The State's cross-motion for summary judgment is granted.

> The court finds that the State continues to have a valid institutional lien against the aforementioned property. Plaintiff's action against defendant is dismissed.

■ We are in substantial agreement with the basic purport of Judge Pisansky's rationale. When the statutorily authorized lien was filed against the property in the manner contemplated by law—before the decedent's death, it attached to her undivided interest in the property at the time. *See Gauger v. Gauger,* 73 *N.J.* 538, 543, 376 *A.*2d 523 (1977)(observing that a joint tenant owns " 'an undivided *moiety* of the whole' of the joint tenancy"). The authorities relied upon by plaintiff for the principle that a surviving joint tenant takes free of liens against the deceased joint tenant's interest unless the lienor has executed the lien before the death of the lienee, *see, e.g., Newman v. Chase,* 70 *N.J.* 254, 359 *A.*2d 474 (1976); *King v. Greene,* 30 *N.J.* 395, 153 *A.*2d 49 (1959); *Bauer, supra,* 235 *N.J.Super.* 127, 561 *A.*2d 674, dealing as they do with competing private interests, are inapplicable where a statutory lien is involved. *See, e.g., In re Sullivan,* 254 *B.R.* 661 (Bankr.D.N.J.2000). *N.J.S.A.* 30:4–80.3 provides that once the lien is filed it "immediately attach[es] to and become[s] binding upon all real property in the ownership of the patient or other persons chargeable...." No judicial action is required to perfect or enforce the lien. *Sullivan, supra,* 254 *B.R.* at 664. Thus, the relative qualities of the competing interests could not be clearer. Once filed during the lifetime of the patient/lienee, who was a joint owner of the real property, this statutory lien operated to attach the whole ownership interest of that lienee, effectively extinguishing any rights of survivorship any other joint owner might have had, to the extent of the lien claim and the patient/lienee's true interest in the property. *Cf. Sadofski v. Williams,* 60 *N.J.* 385, 395–400, 290 *A.*2d 143, 149–52 (1972)(opining on the significance of donative intent where a sole ownership interest has been converted to joint ownership with rights of survivorship). In some circumstances, one joint owner might, as a result, incur a liability to the other joint owner for an appropriate share of the value taken. But such a situation is not presented here.

■ Although the dispositional order in this matter does not directly address the State's rights against any obligor other than the decedent or her estate, the clearly expressed legislative purposes for creating the lien further strengthen the argument that the State's lien survived the death of Mary Boe. In enacting these statutes, the New Jersey Legislature determined that patients are liable for the care they receive at State charitable institutions. Patients and their responsible relatives are required to pay for the care and maintenance provided by the hospital, to the extent they have the financial resources. *See N.J.S.A.* 30:4–66; *N.J.S.A.* 30:4–80.1. "[T]he primary responsibility for the costs of services provided to an individual rests with him and his responsible relatives." *N.J.S.A.* 30:4–24(6). The principle that the primary responsibility for costs is with the patient leads to the conclusion that the Legislature did not intend effectuation of the statutory lien it created to be frustrated by the joint tenancy in existence here at the time the lien was filed.

Accordingly, we affirm.