ISN Bank v. Rajaratnam

508

*Leona Mogavero*, for plaintiff
*Jared N. Klein*, for defendant

MCINERNEY, *J.*, May 22, 2013—

## I. OVERVIEW

Plaintiff ISN Bank, f/k/a Interstate Net Bank, now known as Customers Bank ("plaintiff") appeals from this court's January 23, 2013 order which denied plaintiff's motion to consolidate a judgment entered against Emma Rajaratnam, individually, with a judgment entered against Arasu Rajaratnam, individually. Plaintiff sought consolidation of the judgments to aid in execution on property(ies) held by the Rajaratnams as tenants by the entireties.

On or about December 21, 2005, ISN Bank, f/k/a Interstate Net Bank ("ISN Bank") made a construction loan to Tower Apartment Partnership, LLP ("Tower"). At that time, Arasu Rajaratnam, the principal of Tower, executed and delivered a guaranty agreement to ISN Bank (the "2005 Guaranty Agreement"). On or about October 26, 2007, ISN Bank and Tower entered into a change

in terms agreement, which extended the maturity of the loan to June 21, 2008. At that time, Arasu Rajaratnam and his wife Emma Rajaratnam executed and delivered a guaranty agreement to ISN Bank (the "2007 Guaranty Agreement").

The loan eventually went into default. On August 5, 2009, ISN Bank confessed judgment in its favor and against Arasu Rajaratnam in the Philadelphia Court of Common Pleas at August Term, 2009, No. 0363, pursuant to the 2005 Guaranty Agreement. On May 24, 2010, ISN Bank commenced an action against Emma Rajaratnam in the Philadelphia Court of Common Pleas at May Term, 2010, No. 3129, pursuant to the 2007 Guaranty Agreement and, on April 25, 2012, judgment was entered in favor of plaintiff and against Emma Rajaratnam.

This court properly denied plaintiff's motion to consolidate the judgments because plaintiff cited no relevant authority to support its proposition that this court had the power to consolidate judgments entered separately against different persons. Moreover, even assuming authority to consolidate judgments entered against different persons existed, the court properly denied plaintiff's motion because in this case the judgments were entered pursuant to different guaranties and/or there was not a joint act or clear indication the Rajaratnams intended to waive their rights as tenants by the entirety.

## II. FACTUAL AND PROCEDURAL HISTORY

On or about December 21, 2005, ISN Bank, f/k/a Interstate Net Bank ("ISN Bank") made a loan to Tower

Apartment Partnership, LLP ("Tower") in the form of a non-revolving line of credit construction loan in the maximum amount of $6,980,395 (the "Tower Loan" or the "Loan"). The Tower Loan was evidenced by a note, which was executed and delivered to ISN Bank by Tower. The purpose of the Tower Loan was to finance Tower's renovation of a property located at 5801 Morris Street, Philadelphia, PA into a thirty-six (36) unit condominium development.

In order to secure Tower's obligations to ISN Bank, on or about December 21, 2005, Tower also executed and delivered to ISN Bank a mortgage, assignment of rents, and security agreement for 5801 Morris Street. At that time, Arasu Rajaratnam, the principal of Tower, also executed and delivered a guaranty agreement to ISN Bank (the "2005 Guaranty Agreement").

The Tower Loan was originally due and payable in full on December 21, 2007. However, on or about October 26, 2007, ISN Bank and Tower entered into a change in terms agreement, which extended the maturity of the Loan to June 21, 2008. At that time, Arasu Rajaratnam and his wife Emma Rajaratnam also executed and delivered a guaranty agreement to ISN Bank (the "2007 Guaranty Agreement").

The Tower Loan eventually went into default. As a consequence of Tower's default, judgment by confession was entered on August 5, 2009 in favor of ISN Bank and against Tower in the Philadelphia Court of Common Pleas at August Term, 2009, No. 0362. On that date, judgment by confession was also entered in favor of ISN Bank and

against Arasu Rajaratnam in the Philadelphia Court of Common Pleas at August Term, 2009, No. 0363, pursuant to the 2005 Guaranty Agreement. Emma Rajaratnam was not named as a defendant in ISN Bank's action against Arasu Rajaratnam.

As a consequence the Tower Loan being in default, and based upon her obligations under the 2007 Guaranty Agreement, ISN Bank commenced an action against Emma Rajaratnam by filing a complaint on May 24, 2010 in the Philadelphia Court of Common Pleas at May Term, 2010, No. 3129. Arasu Rajaratnam was not named as a defendant in ISN Bank's action against Emma Rajaratnam.

On or about September 17, 2010, ISN Bank was closed by the New Jersey Department of Banking and Insurance and subsequently the Federal Deposit Insurance Corporation ("FDIC") was named as receiver. At that time, Plaintiff purchased certain ISN Bank's assets, including the Tower Loan, from the FDIC.

On July 11, 2011, the Morris Street property was sold at a sheriff's sale and purchased by plaintiff. Thereafter, plaintiff filed a petition to fix fair market value and establish deficiency judgment in the Philadelphia Court of Common Pleas at August Term, 2009, No. 00362, naming Tower, Arasu Rajaratnam, Emma Rajaratnam, Philadelphia Holdings Group, L.P., Phos Holdings, LLC, and Keswick Associates as respondents.

On February 29, 2012, a bench trial was held before this court in the action against Emma Rajaratnam at May Term, 2010, No. 3129. Following the bench trial, this

court found Emma Rajaratnam was bound by the terms of the guaranty she signed and obligated for the indebtedness due and owing under the 2007 Guaranty Agreement/Tower Loan. On April 25, 2012, judgment was entered in favor of plaintiff and against Emma Rajaratnam in an amount to be determined by resolution of the aforementioned deficiency judgment petition that had been filed in the action against Tower at August Term, 2009, No. 0362.

On June 19, 2012, the deficiency judgment petition was disposed of by a court-approved stipulation of the parties, which had been approved by the Honorable Idee C. Fox. Pursuant to the court-approved stipulation, a deficiency judgment was established in favor of plaintiff in the amount of $3,300,764.53, plus additional interest accruing from and after May 23, 2012 at the legal rate of $515.798 per day.

On December 3, 2012, plaintiff moved to consolidate the judgments entered in the above-captioned cases, i.e. the judgment entered against Arasu Rajaratnam, individually, and the judgment entered against Emma Rajaratnam, individually (collectively, "defendants" or "the Rajaratnams"). In its motion, having cited case law to support the position that this court has authority to consolidate judgments, plaintiff argued that as "[b]oth judgments arise from the same indebtedness, the Loan, ... it is therefore appropriate that they be consolidated." (*See* Pl.'s Mot. ¶¶30, 32.) Plaintiff sought an order "consolidating the separate judgments against Arasu Rajaratnam and Emma Rajaratnam into a single judgment in favor of plaintiff and against Emma Rajaratnam and

Arasu Rajaratnam, [as] husband and wife, jointly and severally, in the amount of the outstanding indebtedness fixed by the [s]tipulation approved by Judge Fox on June 19, 2011." (Pl.'s Mot. ¶30.) And the reason plaintiff sought this consolidation was because according to plaintiff, "Pennsylvania caselaw is clear that where obligations of husband and wife arise from a single indebtedness, entireties property may be reached by the creditor to whom such indebtedness is owed." (Pl.'s Mem. p. 5.)

To support its position that there is a joint liability or single indebtedness in this case for which plaintiff may reach property held by defendants in tenancy by the entireties, plaintiff primarily relied on *In re Bialon*, 1986 Bankr. LEXIS 4875 (Bankr. W.D. Pa. 1986), which found there to be a joint debt between a husband and wife for which entireties property was not exempt from process under Pennsylvania law, and argued the facts of this case were even more favorable than they were there. In addition, plaintiff relied on the fact that defendants were both respondents to plaintiffs deficiency judgment petition and stipulated to the amount of the deficiency judgment in favor of plaintiff. (Pl.'s mem. p. 6.) According to plaintiff, "[b]y stipulating to the judgment, Arasu Rajaratnam and Emma Rajaratnam reaffirmed their joint liability for the Loan, and implicitly acknowledged that the Loan is a joint obligation for which jointly held assets could be reached in satisfaction thereof." (Pl.'s Mot. ¶35.)

On December 21, 2012, defendants responded to plaintiff's motion to consolidate judgments. In their response, defendants began by arguing consolidation of

judgments against different debtors is not appropriate. (Defs.' mem. p. 3.) First, defendants stated consolidation was not appropriate because "Pennsylvania Rule of Civil Procedure 3025.1 addresses [c]onsolidation of [j]udgments, and notes that only judgments 'entered against the same person in the same county' may be consolidated" and the judgments here "have been entered against *different people*, making them inappropriate for consolidation." (Defs.'s mem. p. 3.) Next, defendants asserted the cases cited by plaintiff in support of the position that this court has authority to consolidate judgments were inapplicable because "[w]hile they do hold that judgments may be consolidated into a single judgment, in each case the judgments at issue were against a *single person....*" (Defs.'s mem. p. 3.)

Addressing the issue of whether there is a joint liability or single indebtedness between them in this matter, defendants argued there was not as "these judgments did not create, and were not intended to create, a joint liability." (Defs.' mem. p. 4.) To support their position, Defendants relied on *A. Hupfel's Sons v. Getty*, 299 F. 939 (3d Cir. 1924), *Blusiewicz v. Rosenfield*, 33 Pa. D. & C.2d 470 (C.P. Montgomery, 1964), and *In re Holler*, 2012 U.S. Dist. LEXIS 114335 (E.D. Pa. 2012) and argued:

> Plaintiff's extensive reliance on *In re Bialon* ... is ... misplaced. In that case, in distinguishing *A. Hupfel's Sons*, the *Bialon* court noted that the spousal parties gave and received identical consideration — each agreed to pay rental fees so that the debtor could operate a business. However, as noted in *Holler*, the "*Bialon*

court ignored the necessity of 'a joint act consenting to a change in the attributes of the estate.'" *Holler* at *11, *see also Hupfel*, 299 F. at 941, *Blusiewicz*, 33 Pa D. & C. 2d at 473. In this case, there is no indication that the the Rajaratnam's intended to waive their rights as tenants by the entirety. The fact they both signed the same generic document, created for a purpose separate and distinct from and for different consideration than the original loan to Tower ..., does not establish any intent to create a joint obligation or to waive the protections of tenants by the entireties. As a result, this Court should share the opinion of *Blusiewicz* ... and hold that "There cannot be an execution against property held as tenants by the entireties unless it is upon a judgment wherein defendants have acted jointly as tenants by the entireties and by their action have waived the substantive law of tenants by the entireties...."

(Defs.' mem. p. 6.)

Defendants also argued the deficiency judgment stipulation did not create any joint obligation. Defendants started by pointing out the stipulation does not expressly create a joint liability or acknowledge jointly held assets could be reached in satisfaction of the Loan, noting plaintiff only argued agreeing to the stipulation was some sort of "implicit acknowledgement" of the same. Defendants next asked this court to look at the stipulation and, in turn, argued:

Nowhere in that [s]tipulation do the parties assume liability for the underlying debts as "joint" debts. Nowhere are the obligations referred to as joint debts.

> Nowhere does the [c]ourt impose any joint liability, as Plaintiff suggests. Instead, the [c]ourt did what was appropriate on a Petition to Fix Fair Market Value — it set the value of the property, and, accordingly, the amount of the deficiency. It made no finding of liability, of any kind. Counsel's suggestion that the [s]tipulation did otherwise, explicitly or implicitly, is just false.

(Defs.' mem. p. 7.)

By order dated January 23, 2013 and docketed January 24, 2013, this court denied plaintiff's motion to consolidate the judgments. On February 4, 2013, plaintiff filed a motion for reconsideration, which was subsequently denied. On February 22, 2013, plaintiff filed a timely notice of appeal. Thereafter, this court ordered plaintiff to file a Pa. R. App. P. 1925(b) statement.

In its 1925(b) statement, plaintiff complains that this court erred in denying plaintiff's motion to consolidate the judgments entered against Arasu Rajaratnam and Emma Rajaratnam in the separate actions into a single judgment in favor of plaintiff and "against Arasu Rajaratnam and Emma Rajaratnam, [as] husband and wife, jointly and severally, in the amount of the outstanding indebtedness fixed by the [s]tipulation approved by Judge Idee C. Fox on June 19, 2011" because:

(1) "both judgments resulted from the same indebtedness to [Plaintiff] (the 'Loan');"

(2) "Arasu Rajaratnam and Emma Rajaratnam together executed a single document, the 2007 [Guaranty] Agreement, evidencing their agreement to be jointly liable

for the Loan;"

(3) "both Arasu Rajaratnam and Emma Rajaratnam were named as respondents to [Plaintiff's] Petition to Fix Fair Marke[t] Value and Establish Deficiency Judgment in connection with the balance of the Loan (following the sheriff's sale of mortgaged property securing the Loan). By their counsel, Arasu Rajaratnam and Emma Rajaratnam entered into a [s]tipulation establishing their joint liability for the balance of the indebtedness under the Loan, which [s]tipulation was approved as an Order of Court." (Pl.'s 1925(b) Statement.)

We issue this opinion in support of the order denying plaintiff's motion to consolidate the judgments, which was properly denied for the following reasons.

### III. DISCUSSION

First, plaintiff's motion was properly denied because it cited no relevant authority to support its proposition that this court had power to consolidate judgments entered against different persons. To support its proposition, plaintiff relied on the cases of *Appeal of Reed*, 7 Pa. 65 (1847) and *Appeal of Yeager*, 18 A. 137 (Pa. 1889).

. In *Reed*, on a *scire facias* to revive judgments, several judgments against Daniel McVey were revived and consolidated into one in favor of Henry Welty.[1] After the real estate belonging to McVey was sold at sheriffs

---

1. A *scire facias* is "[a]writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be annulled or vacated, or why a dormant judgment against that person should not be revived." SCIRE FACIAS, Black's Law Dictionary (9th ed. 2009).

sale, the money was awarded to Welty. On appeal, other judgment holders argued Welty's judgments could not be legally revived by consolidation. The other judgments creditors challenged the revival and consolidation because they held some judgments against McVey that were older than some of those held by Welty, but they had failed to revive their judgments by *scire facias* within five years of the entry of the judgments in order to maintain the priority of their liens. On appeal, the Pennsylvania Supreme Court held Welty's judgments against McVey could be revived and consolidated into one in a *scire facias* to revive judgments.

In *Yeager*, three judgments against Henry Beshler were revived and consolidated into one in favor of Jacob Hartman pursuant to an agreement signed by both Beshler and Hartman. On appeal, other judgment holders challenged whether the consolidated judgment preserved the priority of Hartman's three former judgments over the judgments of the other creditors. In affirming that it did, the court noted *Reed* decided "several judgments may be entered, and their lien continued, in one consolidated judgment."

As argued by defendants, and as relevant here, the cases cited by plaintiff do not stand for more than the proposition that several judgments entered against one person may be revived and consolidated into one consolidated judgment against that person. In the case of the Rajaratnams, however, we had judgments entered against different persons. As such, plaintiff failed to cite relevant authority to support its contention that this court had the power to

consolidate judgments entered against different persons, and its motion was properly denied.[2]

In addition, even assuming authority to consolidate judgments entered against different persons existed, the court properly denied plaintiff's motion because the judgments in this case were entered pursuant to different guaranties and/or there was not a joint act or clear indication in this case that the Rajaratnams intended to waive their rights as tenants by the entireties.

Here, the judgments were entered pursuant to different guaranties: the judgment against Arasu Rajaratnam was entered pursuant to the 2005 Guaranty Agreement that only he signed when the Loan was taken out, while the judgment against Emma Rajaratnam was entered as a result of the 2007 Guaranty Agreement that Arasu Rajaratnam

---

2. Further, it appears to this court that Pennsylvania Rule of Civil Procedure 3025.1 cited by defendants codifies principles laid out in *Reed* and *Yeager*, including that several judgments entered against one person may be revived and consolidated into one consolidated judgment against that person.

Rule 3025.1, titled "Consolidation of Judgments," falls under the section of the Rules dealing with revival of judgments liens and provides, in part:

A judgment creditor who holds two or more judgments entered against the same person in the same county may consolidate the judgments by filing

(1) a single praecipe requesting the issuance of a single consolidated writ of revival, or

(2) an agreement to enter a consolidated judgment and revive the lien thereof.

\*\*\*

*Note:* Consolidation does not affect the lien priority of each judgment consolidated.

Pa. R. Civ. P. 3025.1.

Rule 3025.1 addresses issues presented in *Reed* and *Yeager* and only provides that two or more judgments entered against the same person may be consolidated. This court did not see authority to do more in terms of consolidating judgments.

had also signed when the change in terms agreement was executed. The court found this significant because, as will be discussed further *infra*, plaintiff argued the joint act of Defendants that exposed their entireties property to execution is the signing of the 2007 Guaranty Agreement. The judgment against Arasu Rajaratnam, however, does not flow from the 2007 Guaranty Agreement, it flows from the 2005 Guaranty Agreement that only he signed. Thus, plaintiff's judgments are not the result of and do not arise from the joint action plaintiff charged created a joint debt that exposed defendants' entireties property to execution, and in this court's estimation they could not properly be consolidated to that end. Rather, they are judgments separately entered against different persons at different times in different legal proceedings on different obligations — the 2005 Guaranty Agreement and the 2007 Guaranty Agreement — and cannot properly be consolidated or used to reach an estate by entireties.

Moreover, even if only the 2007 Guaranty was at issue, the court would still not have consolidated the judgments because in this case there was not a joint act or clear indication the Rajaratnams intended to waive their rights as tenants by the entireties. A central issue in plaintiff's motion and defendants' response in opposition thereto was whether there was a joint liability or single indebtedness in this case for which plaintiff may reach property held by defendants in tenancy by the entireties. Before we show why there is not a joint act or clear indication the Rajaratnams intended to waive their rights as tenants by the entireties and, consequently, a joint liability or single indebtedness in this case, and why plaintiff should not

be allowed to obtain a judgment enforceable against entireties property held by defendants, we will review the sparse cases in this area, which are essentially those cited by the parties.

In *A. Hupfel's Sons v. Getty*, 299 F. 939 (3d Cir. 1924), the Third Circuit Court of Appeals was faced with an issue of whether a husband and wife who sold a property they held as tenants by the entireties did so free of two judgments previously entered separately against them by the same creditor. In that case, the husband borrowed money from Hupfel's to pay an existing debt and to purchase beer for his saloon. *Id.* at 940-41. After he defaulted on the loans, and Hupfel's obtained a judgment against him, the wife agreed to assume payment of the husband's debt in exchange for a loan from Hupfel's to purchase a liquor license, evidently intending to take over his saloon. *Id.* at 941. In time she too defaulted and Hupfel's obtained a judgment against her. *Id.*

On appeal, the Third Circuit held the obligations of the husband and wife to the judgment creditor did not constitute a joint debt under Pennsylvania law, and that they sold the property free of the judgments. *Id.* at 939-41. In reaching this holding, the court looked at the Pennsylvania Supreme Court's opinion in *Beihl v. Martin*, 84 A. 953 (Pa. 1912), and cited it for the following principles:

(1) while a judgment against a husband or wife would create a lien against the expectancy of the debtor spouse in property held as tenants by the entireties, the judgment is not enforceable against the debtor spouse to the injury of the other spouse during the running of the estate but is

only enforceable when, upon survivorship, the expectancy ripens into a realized fact;

(2) "such a lien is nevertheless subject to be divested by a subsequent conveyance in which both have joined[;]" and

(3) while neither a husband or wife can divest himself or herself of any part of an estate held as tenants by the entireties, the interest of each being in the whole of the property, "'[b]y their joint act they admittedly have the right to sell and dispose of the whole estate; by their joint act they may strip the estate of its attributes and create a wholly different estate in themselves.'" *Hupfel's*, 299 F. at 940, *quoting Beihl*, 84 A. at 956.

With regard to the rules from *Beihl* laid out above, Hupfel's argued on appeal "that the phrase 'their joint act' ... is not limited to a joint act of alienation or of mortgage, or of entering into a joint obligation for the enforcement of which the law gives a joint judgment, but that it extends to transactions where husband and wife, though acting separately, have in effect entered into one obligation and in that sense have acted jointly." *Hupfel's*, 299 F. at 940. Hupfel's then proceeded to argue:

> that the two judgments were based upon the same indebtedness and that in entering into separate obligations for the same indebtedness the two parties, husband and wife, performed a joint act which, though later reflected in separate judgments, falls within the rule which permits tenants by entireties, when acting together, to strip their estate of its attributes and make it

liable for their obligations ahead of their right otherwise to alienate the property free of liens against either of them.

*Id.* at 941.

In rejecting Hupfel's argument, the Third Circuit first noted that it "doubt[ed] whether a common origin of separate debts based upon different considerations is the test of the 'joint act' of which the court spoke in *Beihl v. Martin.*" *Id.* Rather, the court stated it was "inclined to think that the joint act which the court contemplated is a joint act consenting to a change in the attributes of the estate in themselves and not their consent to antecedent transactions." *Id.* Nevertheless, the court stated that it failed to find joint action in any sense, noting the husband and wife "were without doubt mutually interested in the transactions which resulted in the two judgments[,] [b]ut mutuality of interest in separate transactions out of which have grown separate obligations based upon different considerations does not amount to joint action within [its] understanding of the law...." *Id.*

In *In re Bialon*, 67 B.R. 451, 452 (Bankr. W.D. Pa. 1986), the United States Bankruptcy Court for the Western District of Pennsylvania was faced with an issue of whether a lessor/creditor held a joint claim against a debtor in bankruptcy and the debtor's husband that would have subjected the couples' entireties property to process under Pennsylvania law. The issue was before the court because if the claim was joint, the couples' entireties property could not be claimed as exempt under federal bankruptcy law and would be available to satisfy the

creditor's claim. *See id.*

In that case, the debtor wife entered into a lease with the lessor/creditor for the rental of a store in a shopping mall, while her husband entered into an "Individual Guaranty," agreeing to be liable for her debt if she defaulted. *Id.* at 452-53. Eventually, the debtor went into default on the lease and subsequently filed a petition for bankruptcy "wherein she elected to exempt all her entireties property pursuant to applicable Pennsylvania law." *Id.* at 453. The lessor/creditor sought relief from the automatic stay provision of the Bankruptcy Code and the claimed exemptions. *See id.*

The *Bialon* court first reviewed Pennsylvania law regarding property held as tenants by the entireties and creditors, finding that if the lessor/creditor held a joint debt of the husband and wife, the entireties property would not be immune from process and should be available to satisfy the claim. *Id.* The court next reviewed Pennsylvania law pertaining to guaranties and sureties and determined that the guaranty in question, although titled "Individual Guaranty," was actually a suretyship agreement under Pennsylvania law and, therefore, debtor's husband was primarily liable with the debtor, as a surety, for the lease obligations. *Id.* "By virtue of both the lease and the guaranty, the court [then] declared without referring to Pennsylvania law, that [the] debtor and her husband were jointly liable for the debt upon [the] debtor's default under the lease." *In re Holler*, 463 B.R. 733, 744 (Bankr. E.D. Pa. 2011)(footnote omitted), *citing In re Bialon*, 67 B.R. at 454. The court also found that the lease and guaranty created identical obligations as to the duration,

contingencies, and amount owed, thereby producing a single debt owed for the lease payment. *In re Bialon*, 67 B.R. at 454.

Lastly, the court distinguished *Hupfel's* by stating that although *Hupfel's* involved a husband and wife, with one spouse agreeing to guaranty the other's indebtedness, the Third Circuit had found no joint act because there were separate transactions and considerations given for each obligation, whereas in *Bialon*, the court found that the consideration that the debtor and her husband gave and received was identical. *In re Bialon*, 67 B.R. at 454. In reaching this finding, the court stated each spouse agreed to pay rental fees, the debtor/wife as principal and her husband as guarantor, so that the debtor/wife could operate her business from the leased premises. *Id.* The court also stated that the lease and the guaranty while physically separate documents, created a joint obligation, making the debtor and her husband jointly and severally liable to the lessor/creditor. *Id.* The court concluded the entireties property of the debtor and her husband was not exempt from process under Pennsylvania law and therefore could not be exempted under bankruptcy law, and granted the creditor relief from the stay to pursue its claims against the debtor and her husband. *Id.*

In *In re Holler*, 2012 WL 3526466 (E.D. Pa. 2012), the United States District Court for the Eastern District of Pennsylvania addressed essentially the same issue that was addressed in *In re Bialon*, There, the creditor made two loans to a business of which the wife was the sole shareholder and an officer and the husband an officer.

*Id.* at *1. For each of the loans, the husband and wife executed separate commercial guaranties. *Id.* Eventually, the business defaulted on the loans and the creditor confessed four separate judgments per the two guaranties. *Id.* Subsequently, the husband and wife filed a joint petition for bankruptcy and claimed an exemption for their home. *Id.* Each then filed a motion to avoid the liens of the judgments on their home, which the bankruptcy court granted. *Id.*

On appeal, the district court first reviewed Pennsylvania law regarding property held as tenants by the entireties and creditors, concluding that if the judgments constituted joint debts, the debtors' home would not be immune from process, and they would not be entitled to avoidance of the liens. *Id.* at *2. The court, however, agreed with the bankruptcy court that the judgments did not constitute joint debts and affirmed. *Id.* at *3-4.

In reaching this disposition, the court first looked at *Hupfel's* and found it to be controlling. *Id.* at *3. Like in *Hupfel's*, the court found there was not a joint act consenting to a change in the attributes of the estate, noting that (1) the judgment creditor did not have the husband and wife execute a single guaranty agreement, (2) the separate guaranty agreements they signed made them each liable as individuals for the full amount of the loans to the business, and (3) nothing in the documents evidenced an intent to act jointly as spouses or as tenants by the entireties and were "devoid of any indication that they intended to act together and waive their rights as tenants by the entireties." *Id.*

The court also found the judgment creditor's reliance on *In re Bialon* to be misplaced, concluding "the *Bialon* court ignored the necessity of a joint act consenting to a change in the attributes of the estate" as posited by *Hupfel's*. *In re Holler*, 2012 WL 3526466 at *4 (quotations omitted). To support the proposition that a joint act consenting to a change in the attributes of the estate was a necessary to subject a couples' entireties property to process under Pennsylvania law, the *Holler* court also cited to the Montgomery Court of Common Pleas decision in *Blusiewicz v. Rosenfield*, 33 Pa. D. & C.2d 470 (Pa. Ct. Com. Pl., Montgomery County, 1964).

*Blusiewicz* is the only Pennsylvania state court decision to address the issue of whether judgments separately entered against a husband and a wife could constitute a lien against property they held as tenants by the entireties. *See Howard Sav. Bank v. Cohen*, 607 A.2d 1077, 1079 (1992). *See also In re Holler*, 463 B.R. at 742. There, following an action against a husband and wife related to an insurance business they had in Illinois, a judgment was entered against them in Illinois, not as husband and wife, but individually. *See Blusiewicz*, 33 Pa. D. & C.2d at 470.

Subsequently, the judgment creditor tried to execute on real estate held by them as tenants by the entireties in Pennsylvania and the common pleas court was "faced with the question of whether a judgment entered against a husband and wife individually is a valid lien on real estate held by them as tenants by the entireties." *Id.* at 470-71. To determine the issue, the court relied in part on *Hupfel's* and stated:

The principle established by [cases such as *Hupfel's*] as a whole is that there cannot be an execution against property held as tenants by the entireties unless it is upon a judgment wherein defendants have acted jointly as tenants by the entireties and by their action have waived the substantive law of tenants by the entireties.

*Id.* at 473. The court then found the husband and wife had not acted jointly as tenants by the entireties and their action had not waived the substantive law of tenants by the entireties, noting: the judgment obtained in Illinois was against the husband and wife individually; no mention was made in the judgment that they were husband and wife; and the residence was not owned by them individually, but rather as tenants by the entireties, and was in no way connected to their insurance business. *Id.* Thus, the court concluded it was "of the opinion that the incidents of tenants by the entireties should not be destroyed, and accordingly, [it would] not disregard them." *Id.*

While the caselaw is relatively sparse, this court concluded that *Hupfel's* and *Blusiewicz* provide an accurate assessment of the law of Pennsylvania in this area. To wit, we concluded that the judgments could not properly be consolidated, and there could not be execution against property held by defendants as tenants by the entireties, unless the judgments were the result of the Rajaratnams having acted jointly as tenants by the entireties and having waived the substantive law of tenants by the entireties by their joint action. *See Blusiewicz*, 33 Pa. D. & C.2d at 473. The joint act or action that is required "is a joint act [or action] consenting to a change in the attributes of the

estate in [the husband and wife] and not their consent to antecedent transactions." *Hupfel's*, 299 F. 939 at 941.

That said, the judgments plaintiff sought to combine in this case are not the result of the Rajaratnams having acted jointly as tenants by the entireties. Rather, as stated above, the judgments were entered pursuant to different guaranties: the judgment against Arasu Rajaratnam was entered pursuant to the 2005 Guaranty Agreement that only he signed when the Loan was taken out, while the judgment against Emma Rajaratnam was entered as a result of the 2007 Guaranty Agreement that Arasu Rajaratnam had also signed when the change in terms agreement was executed.

In large part, plaintiff complains this court erred in not consolidating the judgments because "both judgments resulted from the same indebtedness to [Plaintiff] (the 'Loan')" and "Arasu Rajaratnam and Emma Rajaratnam together executed a single document, the 2007 [Guaranty] Agreement, evidencing their agreement to be jointly liable for the Loan[.]" (Pl.'s 1925(b) statement.) While the judgments result in the Rajaratnams being liable for the same indebtedness, the Loan, plaintiff's judgments are not the result of and do not arise from the joint action plaintiff charged created a joint debt that exposed defendants' entireties property to execution, the signing of the 2007 Guaranty Agreement. Rather, only the judgment against Emma Rajaratnam resulted from the signing of the 2007 Guaranty Agreement. The judgment against Arasu Rajaratnam resulted from the 2005 Guaranty Agreement that only he signed. Thus, the judgments were the result of

separate transactions and different obligations on the part of defendants.

The consideration that Arasu Rajaratnam gave and received for executing the 2005 Guaranty Agreement was also different from the consideration that Emma Rajaratnam gave and received for executing the 2007 Guaranty Agreement. The 2005 Guaranty Agreement was given to secure the Loan. The 2007 Guaranty Agreement was given to secure the change in terms agreement that extended the maturity of the Loan. *Compare In re Bialon*, 67 B.R. at 454 (finding the consideration that the debtor and her husband gave and received in executing their respective instruments was identical) *with Hupfel's*, 299 F. at 940 (finding the consideration that the husband and wife gave and received in entering into their respective obligations was different).

In the opinion of this court, the judgments could not properly be consolidated, or used to reach an estate by entireties, as consolidation in this case would not create a consolidated judgment that was the accumulation of judgments wherein defendants had acted jointly as tenants by the entireties and had waived the substantive law of tenants by the entireties by their joint action. *See Blusiewicz*, 33 Pa. D. & C.2d at 473 ("[T]here cannot be an execution against property held as tenants by the entireties unless it is upon a judgment wherein defendants have acted jointly as tenants by the entireties and by their action have waived the substantive law of tenants by the entireties."). Rather, the judgments at issue were separately entered against different persons at different times in different legal

proceedings on different obligations — the 2005 Guaranty Agreement and the 2007 Guaranty Agreement — as the result of different consideration and cannot properly be consolidated or used to reach an estate by entireties. *See Hupfel's*, 299 F. 939 at 941 (noting "mutuality of interest in separate transactions out of which have grown separate obligations based upon different considerations does not amount to joint action within [its] understanding of the law....").

Moreover, even if only the 2007 Guaranty was at issue, the court would still not have consolidated the judgments because in this case there was not a joint act or clear indication the Rajaratnams intended to waive their rights as tenants by the entireties. The language of the 2007 Guaranty Agreement is individual and generic in nature. Nothing in the 2007 Guaranty Agreement referred to the Rajaratnams marital relationship or their ownership of property as tenants by the entireties or suggested that they consented to change the protective attributes of owning property such as a home as tenants by the entireties.

The only language that remotely touches on the issue was the following: "*Interpretation.* In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require...." (2007 Guar. Agreement at 3.) However, as explained in *Holler*, this language merely maintains grammatical accuracy when more than one party signed the document. *See In re Holler*, 2012 WL 3526466 *4. And this court found it significant that

this guaranty, generic in nature could have been signed by any two people — husband and wife; brother and sister; grandparent and grandchild; or two total strangers — making its signing far less than a clear indication the Rajaratnams intended to waive their rights as tenants by the entireties.

Plaintiff could have included express language in the guaranty waiving the protections of tenancy by the entireties or required the Rajaratnams execute the guaranty as husband and wife, etc. but it did not. Rather, plaintiff had the Rajaratnams sign a generic document that does not evidence that they acted jointly as tenants by the entireties and waived the substantive law of tenancy by the entireties.

The fact that Emma Rajaratnam and Arasu Rajaratnam both signed the 2007 Guaranty Agreement does not change this. While the court in *Holler* found it significant that the husband and wife signed separate guaranties, this court did not find it dispositive as argued by plaintiff. (Pl.'s mem. p. 6.) As stated above, the 2007 Guaranty Agreement was generic in nature. In the absence of a clear indication that the Rajaratnams acted jointly and intended to waive their rights as tenants by the entireties, this court would not hold that they had a joint liability or single indebtedness for which plaintiff could reach property held by them as tenants by the entireties.

And more than liability for the same debt is needed to allow judgment liens to encumber entireties property. Plaintiff argued consolidation was appropriate because the judgments against the Rajaratnams arise from the same

indebtedness, the Loan. (Pl.'s mem. p. 5.) In both *Hupfel's* and *Blusiewicz*, however, more than liability for the same debt was required. Following *Hupfel's* and *Blusiewicz*, this court required more as well.

Regarding the case upon which plaintiff primarily relied, Bialon, as noted in *Holler*, and as argued by defendants, "the *Bialon* court ignored the necessity of 'a joint act consenting to a change in the attributes of the estate'" as required in *Hupfel's* and *Blusiewicz*, In re Holler, 2012 WL 3526466 at *4, *quoting A. Hupfel's Sons*, 299 F. at 941 *and citing Blusiewicz*, 33 Pa. D. & C.2d at 473. Accordingly, this court did not find *Bialon* to be very instructive.

Finally, the fair market stipulation did not create any joint obligation between Emma Rajaratnam and Arasu Rajaratnam. As argued by defendants, the deficiency judgment stipulation did not expressly create a joint liability or acknowledge jointly held assets could be reached in satisfaction of the Loan, nor did plaintiff even argue that it did. Rather, plaintiff only argued agreeing to the stipulation was some sort of "implicit acknowledgement" of the same. Looking at the stipulation, however, this court did not agree with plaintiff. Nothing in the stipulation evidences intent by the Rajaratnams to be jointly responsible for the Tower Loan. The stipulation merely accomplished the purpose of the petition to fix fair market value to set the value of the property so that the amount of the deficiency could be calculated.